## IN RE HARDY

[No. 27,400. Filed May 1, 1940.]

*Frank H. Hatfield, Edwin C. Henning, Winfield K.*
*Denton, Richard Waller, Isidor Kahn,* and *Edward E.*
*Meyer,* all of Evansville, for respondent.

PER CURIAM.—On October 16, 1939, the Appellate
Court of Indiana filed an opinion dismissing the case of
*Santa Claus, Inc., et al.* v. *Santa Clause of Santa
Claus, Inc.,* 22 N. E. (2d) 879, 880. The opinion recites:
"The record presented to us is so impregnated with
spoliation of some unknown stranger to the record while
the record was in the possession of the appellants or
actually mutilated and forged by the appellants as
charged by the appellee that in our opinion no record
importing proper verity is before us." It is said in the
opinion that the record was altered by adding page 157,
showing the filing of a bill of exceptions by the appel-
lants, and page 717, showing that the appellants filed
with the clerk a written praecipe; that on page 98 of
the transcript the date, August twenty-eighth, was
changed to August twenty-ninth. It is also pointed
out that, after the transcript was prepared, six pages
had been inserted in the bill of exceptions containing
the longhand transcript of the shorthand report of the
trial, and that these pages were removed by the trial
judge. These are the only changes in, or mutilations of,
the record referred to in the opinion.

On March 28, 1940, the Appellate Court filed an
opinion denying a rehearing in the case, in which it is
said: "In considering this petition it is noted that the
appellants do not deny the mutilation but contend only
that such mutilation, if any, is immaterial. In the

oral argument of this case the attorney for the appellants, W. D. Hardy, accepted full responsibility for whatever mutilation that appears in the record and stated in open court that such responsibility was his." 26 N. E. (2d) 80, 81. And, on the same day, the Appellate Court presented to this court a memorandum bearing the title and number of the case referred to, which is as follows: "We respectfully call the attention of the Supreme Court of this State to the mutilation of the record in this case as shown by the opinion of this court in 22 N. E. (2d) 879. We take this action by reason of the lack of jurisdiction in this court to deal with the matter fully and finally. On the oral argument of this case in this court attorney *William D. Hardy* assumed full responsibility for whatever mutilation was made and at that time he fully exonerated from blame the other attorneys appearing for the appellant."

Upon receipt of the above memorandum, this court examined the opinion of the Appellate Court and found that the matters disclosed were sufficient to challenge the consideration of this court, and ordered that "on or before the 19th day of April, 1940, at 10:00 o'clock A. M., of said day, the said William D. Hardy show cause, if any he has, why his name should not be stricken from the roll of attorneys of this court, and why this court should not take such further action and make such further orders in said matter as it shall deem necessary and proper."

Thereafter, on April 19, 1940, William D. Hardy appeared by Frank H. Hatfield, Edwin C. Henning, Winfield K. Denton, Richard Waller, Isidor Kahn, and Edward E. Meyer, reputable members of the bar of Vanderburgh County and of the bar of this court, and filed his verified response and answer, expressly and

categorically denying that he made any changes or alterations in the record in question, except that he prepared two pages which he presented to the clerk of the trial court with the request that they be substituted for two pages which the clerk had prepared as part of the record, and which the clerk did personally insert in such record. There is a prayer that he be adjudged free from any wrongful act, and for such other relief as may be considered proper.

For the purpose of ascertaining the facts, we have carefully examined the record and pleadings on file in the Appellate Court, and the response and the affidavits and exhibits attached thereto. We have caused the deposition of Marguerite Canary, the deputy clerk who prepared the transcript, to be taken, we have caused the alleged erasure and changes in the transcript to be examined by the expert in the laboratory of the Indiana State Police Department, and we have caused all of the attorneys of record in the case to appear before the bar of this court and testify as to the facts within their knowledge.

The record as filed in the Appellate Court is typed upon ruled and line-numbered transcript paper. Pages 157 and 717 are upon paper with unruled margins. These two pages are clearly and obviously different from the other paper in the record. The transcript was filed in the office of the Clerk of the Appellate Court on May 8, 1937. On November 16, 1937, the appellee filed a verified petition for a writ of certiorari in which it is alleged that the transcript is incomplete and incorrect in eleven particulars. Most of the specifications deal with small matters of inadvertent omission by the clerk. We are concerned only with the specification that page 157, showing the filing of defendants' bill of exceptions, "has been wrongfully, errone-

ously and apparently by design, added to this Transcript, although it does not appear of record in the Martin Circuit Court of Indiana, either in the Reporter's minutes concerning the trial of this cause, the original papers therein, the court's minutes, or civil order book entries"; the specification that page 717, purporting to show a praecipe directing the preparation of a transcript by the clerk, "has been wrongfully, erroneously and apparently by design, added to this Transcript, although it does not appear of record in the Martin Circuit Court of Indiana, either in the original papers therein, the Reporter's minutes concerning the trial of this cause, the court's minutes, or civil order book entries"; and the specification that on page 98 of the transcript the word "twenty-eighth" has been changed and altered to read "twenty-ninth."

At the time of the filing of the petition for certiorari, certain affidavits were filed supporting it. One purported to be the affidavit of James G. Canary, Clerk of the Martin Circuit Court. In this it is recited "that he prepared and signed" the transcript; that he has examined the transcript and the verified petition for certiorari, and that the specifications therein are true so far as is disclosed by the records. "That pages 157 and 717 of said Transcript and each of them were not a part of said Transcript at the time it was signed by him, nor at the time it was delivered to Appellants counsel as hereinafter stated and that he did not prepare either of said purported order book entries on said pages, his certificate to said transcript notwithstanding, nor has he had any manuscript paper of the kind and character on which said pages 157 and 717 are written in his said office at any time, for the purpose of preparation of Transcripts. That said affiant, at the time of signing said Transcript, did not know that either of

said pages 157 and 717 had been added thereto or were contained therein." This affidavit was sworn to before Fabius Gwin, as Notary Public, on the 15th day of November, 1937. It now appears beyond all controversy, and is admitted by counsel for the appellee, who prepared the affidavit and caused it to be signed, that, although it appears to be the affidavit of James G. Canary, it was signed with his name by Marguerite Canary, the deputy clerk; that James G. Canary had no knowledge of the making of the affidavit, and that at the time it was made Marguerite Canary had no knowledge of the fact that James G. Canary was cognizant of, and had approved, the substitution of the new pages 157 and 717 in lieu of the original pages 157 and 158 in the transcript. There is also an affidavit of the Honorable Fabius Gwin, who presided at the trial, in which he states that, after the transcript prepared for the appeal had "been signed by this affiant and the Court Reporter at the trial of said cause," it was delivered to Julian C. Ryer; that when the transcript was returned it was found that six pages of typewritten matter, purporting to be a portion of the bill of exceptions or the court reporter's record of the proceedings at the trial, "had been wrongfully, erroneously and apparently by design, added to said Transcript," and that he as judge removed those pages from the transcript. There is also an affidavit of the Honorable Frank E. Gilkison, the regular Judge of the Martin Circuit Court, concerning the date on page 98 of the transcript, to the effect that the transaction involved occurred upon the twenty-eighth of August, 1936, and not the twenty-ninth.

On the filing of this petition for certiorari, the appellants were granted time to file a response thereto, which was filed on November 26, 1937. This response is

signed by Julian C. Ryer, of Chicago, Illinois, a member of the Illinois bar, and William D. Hardy, as attorneys for appellants, and is accompanied by an affidavit of William D. Hardy. It appears from this affidavit that William D. Hardy was not retained as an attorney for the appellants until after the trial and judgment in the court below, and that he is not familiar with the proceedings prior to that time, but that he was retained for the purposes of the appeal and to make up the record for appeal; that when the transcript was delivered to appellants' counsel it was unassembled and unbound, and the pages were in part unnumbered; that it was delivered to Julian C. Ryer, and by him delivered to Mr. Hardy at the City of Evansville for indexing, marginal noting, assembling, and binding; that he delivered it to a former reporter of the Vanderburgh Circuit Court to be indexed and marginal noted, and that after this reporter had done some work upon it she abandoned her effort because of the confused condition of the transcript; that thereafter the affiant, with his stenographer, completed the index, assembled the transcript and had it bound; that he discovered that the Clerk of the Martin Circuit Court had inserted the praecipe between the entry showing the filing of the bill of exceptions and the bill of exceptions itself; that for the sole purpose of separating these parts of the record, so that the entry showing the filing of the bill of exceptions might immediately precede the bill of exceptions, and the praecipe would come at the end of the transcript preceding the certificate of the clerk, he rewrote pages 157 and 158, and numbered the pages so rewritten 157 and 717; and that, without removing the original pages 157 and 158 from the transcript, which was still unbound, he drove to the City of Shoals, in Martin County, and there exhibited the pages which

he had written to James G. Canary, the clerk of the court, at his home, and that the clerk proofread the rewritten pages, and that then and there, in the presence of the clerk, the original pages 157 and 158 were removed and the pages 157 and 717, prepared by the affiant, were inserted in the unbound transcript "with the knowledge, consent and approval of said Clerk." Attached to the response are two pages, which William D. Hardy, in his affidavit, asserts to be the original pages 157 and 158 which he found in the transcript prepared by the clerk. These pages have marginal notes in pen and ink that seem the same as the marginal notes in the other part of the transcript, and they are on transcript paper identical with that used by the clerk in the remainder of the transcript. The top part of page 157 shows the filing of a bill of exceptions, and the bottom part of that page and page 158 show the filing of the praecipe, and the praecipe for the entire record. It is obvious that if the record of the filing of the bill of exceptions was to precede the bill of exceptions, and the praecipe was to be inserted at the end of the record, the pages would have to be rewritten. It is asserted in Mr. Hardy's affidavit "that counsel for appellee knew these facts at the time their verified petition for writ of certiorari was filed herein; that this affiant told Paul F. Mason, of counsel for appellee, the facts above stated and that the original pages included in the transcript were in possession of said affiant before said petition (for certiorari) was filed by appellee." Concerning the erasure and change of date, we quote the following from the affidavit: "Affiant further says that he has no knowledge of the error, mistake, or alteration appearing from the insertion of the word 'twenty-ninth' in lieu of 'twenty-eighth' in line 13 on page 98 of the transcript; that he does not know

who wrote the word 'twenty-ninth' and that it is an apparent error in correcting, or attempting to correct the manuscript in typing. Pages 97 to 101 inclusive, reveal clearly that this is purely an error, as the context and other dates set forth reveal no other alterations and the change of no other date."

Certiorari was ordered, and in response certain facts respecting the specifications in the petition for certiorari were certified in the name of James G. Canary, Clerk. The clerk's certificate to this response is signed with what appears to be the identical signature attached to the certificate to the original transcript and to the affidavit sworn to before Fabius Gwin, Notary Public. It is certified that: "The word, 'twenty-ninth' on page 98 at line 13 of said transcript has wrongfully, erroneously and apparently by design been changed and altered after I, as Clerk of this court had heretofore certified to said Transcript. The correct and true wording thereof is 'twenty-eighth.' "

The response also contains this statement:

"I further certify that page 157, in its entirety, and purporting to be an order book entry, showing the filing of Defendant's Bill of Exceptions, should be stricken from the record and Transcript herein, for the reason that it has been wrongfully, erroneously and apparently by design, added to this transcript, although it does not appear of record in the Martin Circuit Court of Indiana, either in the Reporter's minutes concerning the trial of this cause, or the civil order book entries.

"I further certify that I do not have, nor have I ever had, in this office of the Clerk of the Martin Circuit Court, transcript paper such as is used on said page. I further certify that I, as Clerk, did not prepare said page, and the records disclose no such proceedings were had in this court on March 25, 1937.

"I further certify that page 717 of this Transcript, in its entirety, and purporting to be a Praecipe of the defendants, directing the preparation of the Transcript by the Clerk of the Martin Circuit Court of Indiana, should be stricken from the record and transcript herein, for the reason that it has been wrongfully erroneously and apparently by design, added to this Transcript, although it does not appear of record in the Martin Circuit Court of Indiana, either in the Reporter's minutes concerning the trial of this cause, the court's minutes, or civil order book entries."

Upon this record, and a statement by William D. Hardy in oral argument that he assumed full responsibility for the changes in the record, the Appellate Court reached the conclusion announced in its various opinions and orders above referred to.

Upon the face of the affidavits then before the Appellate Court, it appears that James G. Canary made the affidavit, filed with the petition for certiorari, to the effect that he prepared and certified to the original transcript, and that pages 157 and 717 had been added to the transcript without his knowledge or consent, and that they had no proper place in the transcript. The affidavit of William D. Hardy, filed with the objections to the petition for certiorari, stated that he had prepared pages 157 and 717, and had substituted them for the original pages 157 and 158 which he found in the transcript, and that the substitution of the pages was in the presence of, and with the consent and approval of, James G. Canary, Clerk. After this affidavit was filed, and upon response to the writ of certiorari, it was again certified in the name of James G. Canary that the pages were improperly in the transcript, and were not there with his knowledge or consent. Thus, upon the surface, there appears to be a direct conflict

between the sworn statements of James G. Canary, Clerk, and William D. Hardy. In William D. Hardy's affidavit he disclaims any knowledge of the change in dates from the "twenty-eighth" to the "twenty-ninth," and shows that no question involving the date was presented on the appeal, and hazards the suggestion that it is a stenographic mistake. In his affidavit he points out that six pages were added to the bill of exceptions by his associate, Julian C. Ryer, and that when he discovered the fact he went to the trial judge, and that, with his consent, the trial judge removed the pages. What was said in the argument we do not know, but the statement that William D. Hardy accepted full responsibility for whatever mutilation appears in the record, would seem to indicate either a change of position on the part of Mr. Hardy with respect to the facts, or a misunderstanding on the part of the court as to the matter for which Mr. Hardy was accepting responsibility. Responsibility for having prepared the substituted pages 157 and 717, and having caused them to be inserted in the transcript, with the consent of James G. Canary, Clerk, he had already accepted in his affidavit, and it is difficult to believe that in oral argument he wished to be understood as admitting that the pages were inserted in the transcript under any other circumstances; and it is difficult to conclude, in the face of the record, that he wished to be understood as accepting responsibility for erasure of the word "twenty-eighth" and the substitution of the word "twenty-ninth," or that he wished to be understood as accepting responsibility for the insertion of the pages in the bill of exceptions which had been removed at his suggestion by the trial judge. Aside, however, from the statement of his having accepted full responsibility, we have what must have appeared to be a direct conflict between the

affidavits of James G. Canary and William D. Hardy upon the question of whether or not the substitution of the pages was made with the consent and knowledge of James G. Canary, and the Appellate Court may have concluded that William D. Hardy's affidavit was false in this respect, and that James G. Canary's affidavit was true, and that therefore William D. Hardy had unlawfully and improperly mutilated and changed the record.

It is now conceded by all that James G. Canary did not sign the affidavit which bears his name; that both the affidavit and the response to the petition for writ of certiorari were signed with the name "James G. Canary" by Marguerite Canary, his deputy. Paul F. Mason, attorney for the appellee, has stated at the bar of this court that he prepared both the affidavit and the response to the petition for writ of certiorari; that he has no recollection of examining the affidavit of William D. Hardy above referred to before preparing the response; that he has no recollection of William D. Hardy informing him of the change of the two pages; that he did not at any time consult with, or make inquiry of, James G. Canary personally concerning the change, and that he did not advise Marguerite Canary of the facts disclosed in the affidavit of William D. Hardy. Marguerite Canary has since examined the original pages exhibited by William D. Hardy, and has made affidavit that they were prepared by her as part of the original transcript, and that they clearly appear to have been part of it. James G. Canary has since died. He was a farmer, unfamiliar with the ways of courts, and took no part in the management of the clerk's office in so far as it affected the court and its records. His widow has made affidavit that she clearly remembers the occasion of William D. Hardy's visit to their home

and of his explaining to her husband the purpose of rewriting the pages in question in the transcript; that she assisted in comparing the pages, and that they were inserted in the transcript with the consent and approval of her husband. There is nothing in the record to dispute these facts. Counsel for appellee at the bar have said that they can suggest no evidence to the contrary, or no reason for disbelieving them, and there are other facts since come to light which clearly corroborate the Hardy affidavit. The present Clerk of the Martin Circuit Court has searched the letter files, and has discovered in the files the following original letter:

> "William D. Hardy
> "Attorney at Law
> "Mercantile Bank Building
> "Evansville, Indiana

> "March 24, 1937.

"Clerk Martin Circuit Court,
"Shoals, Indiana.

"Dear Sir:

Re: No. 11,470—Santa Claus of Santa Claus,
Inc. vs. Santa Claus, Inc., et al.

"I enclose herewith copy of the original motion for a new trial.

"I have been advised that you cannot find the original motion, and this is the copy you made and sent to me at my request in December last.

"This may be copied into the transcript.

"I enclose also an entry showing the filing of the bill of exceptions. Please copy this entry into the record as the transcript must show the bill was filed after it was approved by the Judge.

"I am sending you also, by express, the bill of exceptions which was left with me at Indianapolis during the session of the Legislature. I have carried this through Shoals a time or two, but after your office hours, and therefore I did not leave it.

"I am enclosing also a praecipe for transcript.

"Very truly yours,

"WDH:KS "W. D. Hardy

"Enc. "W. D. HARDY

"P. S. In preparing this transcript be sure to include the minute of the filing of the supplemental motion as this appears on the entry docket, showing the date of the filing of this motion and the Clerk's initials as this appears in the record made.

 "W. D. H."

Marguerite Canary has examined this original letter and indorsed upon it the following:

"I definitely remember receiving this letter from Senator Hardy on or about March 26, 1937 at the Clerks Office in Shoals.

 "Marguerite Canary.

"Dated this 25th day of April, 1940."

She now makes affidavit that, notwithstanding she had certified in the response to the petition for writ of certiorari that there was no praecipe in the files, she now distinctly remembers the enclosure of the entry showing the filing of the bill of exceptions and the praecipe. The present clerk has also discovered in the files what appears to be the original praecipe.

In the light of these facts, disclosed and exhibited to all of the attorneys of record in the case, at the bar of this court, the attorneys for the appellee have stated

in open court that they are unable to point to any evidence indicating, or tending to indicate, any mutilation or unlawful change in the transcript in respect to pages 157 and 717. It may be noted that Mr. Mason informed the court that the language of the affidavit and the response to the petition for writ of certiorari was his language, and that he had prepared the instruments for signature by Marguerite Canary, and that the language was not her language.

The transcript was submitted by the court to Edwin C. Schroeder, Examiner of Questioned Documents of the Indiana State Police Criminological Laboratory. He has made affidavit that he made a laboratory examination of page 98 of the transcript; that his examination discloses that the questioned word was originally written "twenty-ninth"; that the only erasure discernible under the microscope was in the space occupied by the letters "wen" in the word "twenty"; that after this erasure the word "twenty-ninth" was retyped in its entirety; that under the word "ninth" none of the fibres of the paper had been disturbed by erasure; that the letters are in perfect alignment, and that the erasure and retyping were undoubtedly done without removing the paper from the typewriter; that the typist who wrote the page evidently made a mistake in writing the word "twenty," and, after the erasure, retyped the entire hyphenated word. It is noted that in the second line above this questioned word, and almost immediately above it, there properly appears the word "twenty-ninth." Marguerite Canary had never prepared a transcript for an appeal before, and had but slight familiarity with pleadings and records. The context might be confusing to an inexperienced person, since the dates "twenty-eight" and "twenty-ninth" appear repeatedly upon page 98 and the preceding and succeed-

ing pages. A re-examination of the page, in the light of the information furnished by Mr. Schroeder, leaves no reasonable doubt that the word was originally written "ninth," and that it was not changed from "eighth" to "ninth" by any one. This conclusion becomes unavoidable when it is found that there could have been no possible motive for changing the word. The affidavit of Judge Gilkison, in which it is contained, was first brought into the case in response to a petition for a writ of prohibition filed in this court. Its purpose was to show that the attorneys for the defendants had been notified that they must strike from the list of names handed down, from which a special judge was to be chosen, on the morning of the twenty-ninth. The attorneys who prepared this response were evidently under the impression that the defendants' attorneys were disputing the fact, but, on the contrary, they asserted in their petition for a writ of prohibition that they had been ordered to strike on the morning of the twenty-ninth, and contended that this was unlawful, and that under the law they had until midnight on the twenty-ninth to strike. The same contention is sought to be made in the argument on pages 272 and 273 of appellants' brief. The conversation which was fixed in the affidavit as occurring on the night of the twenty-eighth was of no importance whatever. It made no difference whether it occurred on the twenty-eighth, or the twenty-ninth, or the thirtieth, or at all, and no effort was made to make any point or contention respecting this date. It is further noted that a reading of the context beginning on page 97, and including page 101, of the record, clearly discloses the error, and that the date of the conversation was the evening of the twenty-eighth, and, to avoid this disclosure by the record, it would seem that it would have been neces-

sary to alter several other words, and there is no indication of any attempt to do so. It seems therefore, upon this careful examination, that the Appellate Court was laboring under a misapprehension in concluding that this date was of importance; that it had been changed from the "twenty-eighth" to the "twenty-ninth"; and in concluding that this part of the record was changed or mutilated by the appellants or by William D. Hardy, if it so concluded.

Respecting the six pages that had been inserted in the bill of exceptions, it has been represented to this court, both by affidavit, and under oath at the bar of this court by Julian C. Ryer, a member of the bar of Illinois, that he inserted this matter in the bill of exceptions, believing that he had a right so to do. It was stated by William D. Hardy in his affidavit attached to the objections to the issuing of the writ of certiorari by the Appellate Court, and filed in that court on November 26, 1937, that when the transcript came into his hands he found these typewritten pages, which appeared not to have been prepared by the court reporter, inserted in the bill of exceptions, and a notation by Fabius Gwin, Special Judge, that they had not been a part of the bill of exceptions when it was certified by him; that he immediately took the bill of exceptions to the special judge and asked him to remove them, and that they were thus removed by Fabius Gwin. This was not disputed before the Appellate Court, and it is corroborated now by the affidavit of Fabius Gwin, and there is no evidence to the contrary, and counsel for the appellee have stated at the bar of this court that they know of no evidence to the contrary. It may be noted further that the insertion of these pages and their removal all occurred before the transcript was filed in the Appellate Court.

Reference is made in the Appellate Court's opinion to an original action in this same case filed in this court before the trial of the case below. It is said that this court was falsely informed concerning the facts. It was asserted in the petition in that case that the name of Fabius Gwin was not in the original list of names handed down by the trial judge. The response disclosed that Mr. Gwin's name was not announced by the court in the first instance, but that almost immediately after announcing the first three names the court withdrew one of them and substituted the name of Mr. Gwin. There was another slight conflict in the representations made by the parties as to what was said orally at another time during the proceedings. Immediately upon the filing of the affidavit of the trial judge giving his version of these conversations, the petitioners withdrew their contentions. These conflicting statements as to what was said in oral conversations were attributed by this court to misunderstanding, the kind of misunderstanding that so frequently results in disagreement as to what was said orally. It was said by counsel for the appellee at the bar of this court that the statements then made by appellants' attorneys aroused their suspicion that these attorneys were seeking to misrepresent the facts and were stooping to dishonorable practice. While it may be conceded that the representations may have aroused suspicion, the facts were not sufficient to justify the conclusion that they were dishonestly made. It is to be noted that William D. Hardy was not appearing in the case at that time.

After a full consideration and examination of the various evidences herein referred to, counsel for the appellee, who procured the dismissal in the Appellate Court, were asked if they had any evidence, or could

point to anything in the record or the evidence before this court, which indicated or tended to indicate any mutilation or spoliation of the record as it appeared in the Appellate Court at the time the case was dismissed, or any substantial inaccuracy in the record. Court was recessed and they were given time to compare and further consider and examine the record, and they were offered further time, which they declined, and they each and all stated to the court that they were unable to point to or suggest any such evidence. They were asked if they could suggest or point to any evidence, or if they knew of any evidence, that indicated or tended to indicate any unlawfulness or unethical conduct or impropriety on the part of William D. Hardy in respect to the record, and each and all expressly said that they found no such evidence or indication thereof. The members of this court have carefully scrutinized and examined the record and the affidavits and other evidence adduced, and have invited counsel to fully advise the court and bring forth any evidence which they may have. We have failed to find any evidence which establishes, or tends to establish, any impropriety of any kind on the part of William D. Hardy, or any evidence that the record, as it stood in the Appellate Court at the time the cause was dismissed, was forged or mutilated or that it misstated or misrepresented the facts as disclosed by the records of the court below in any substantial respect, or in any respect except that in making the transcript the clerk inadvertently and erroneously wrote the word "twenty-ninth" where it should have been "twenty-eighth" on page 98.

In his response Mr. Hardy says: "Your respondent further respectfully submits that he is of the opinion,

which opinion is shared by his counsel, that the citation herein brings into the issue of this cause his reputation for ethical and good moral conduct, and that, purely for the purpose of supplying evidence upon that issue, he has attached to and made a part of this, his said response, a resolution of the Evansville Bar Association, unanimously adopted on Monday, April 15, 1940, at a regular meeting of said association, purely as an attestation to the reputation of this respondent for good character and ethical conduct, together with other affidavits solely upon that issue, which affidavits this respondent respectfully submits he has attached hereto solely upon that issue, and for no other purpose." The attached resolution is in part to the effect: "That W. D. Hardy has practised law before the courts of this county for thirty-five years, during by far the greater portion of which time he has been and is now a member of this Association; that we, the members of this Association, have known him for varying periods of time during that practise and during his membership in this Association and that we have found him to be uniformly ethical, honorable and gentlemanly in his dealings with the court and his brother lawyers." When one is charged with crime he may show his good reputation as tending to establish innocence. We quite agree with respondent and his counsel that his standing among his fellows was properly brought into the issues when he is charged not only with dishonorable and unethical conduct, but with a felony, and threatened with the destruction of that priceless asset to a professional man, his good reputation. There is no evidence of his guilt. On the contrary, the evidence discloses his complete innocence of wrongdoing beyond the peradventure of doubt, and the testimony of his fellows as to his good reputation was

not necessary to establish his innocence, but it tends to accentuate the grave injustice that has been done him through a misapprehension of the facts. Legally, the fact that he has been cited does not mitigate against his high standing and good reputation. It is to be hoped that it will in fact work him no injury.

The rule to show cause is discharged.

NOTE.—Reported in 26 N. E. (2d) 921.